## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

CENTURY BANK,

      Plaintiff,

v.                                                              Civ. No. 22-423 GJF/SMV

ADT COMMERCIAL LLC,

      Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendant's Motion to Dismiss and Memorandum in Support ("Motion"). ECF 10. The Motion is fully briefed. *See* ECFs 13 ("Response"), 19 ("Reply"). The Court heard extensive argument on the Motion on November 15, 2022. *See* Tr. of Mtn. Hr'g, ECF 28 ("Tr."). For the reasons stated on the record at the hearing and as further explained below, the Court will **GRANT** the Motion. Specifically, Count IV of the Complaint is **DISMISSED WITH PREJUDICE** and Counts I, II, III, V, and VI of the Complaint are **DISMISSED WITHOUT PREJUDICE**.[1]

## I.    BACKGROUND

### A.  The Parties

Plaintiff Century Bank is chartered in New Mexico with its principal place of business also in New Mexico. ECF 1-2 at ¶ 1 ("Complaint"). Defendant ADT Commercial LLC is a Colorado limited liability company; one of its subsidiaries, Red Hawk Industries of New Mexico, LLC, conducts business in New Mexico on ADT's behalf. *Id* at ¶¶ 2, 5–6. In 2016, Plaintiff executed a Service Agreement ("Contract") in which Defendant promised to inspect and service Plaintiff's

---

[1] The Court will permit Plaintiff two weeks to file an amended complaint. If Plaintiff instead prefers to avail itself of the more than five years remaining under the statute of limitations, *see* N.M.S.A. § 37-1-3, and await the development of additional facts to support some or all of its claims, the Court will administratively close the case.

automated teller machines ("ATMs") for five years; in exchange, Plaintiff promised periodic payments totaling $152,716.52 per year.  *Id.* at ¶¶ 7–9.  Absent termination by either party, the Contract would automatically renew year-by-year ad infinitum.  *Id.* at ¶ 9.

Both parties satisfactorily performed their obligations for five years and, on July 1, 2021, the Contract automatically renewed through July 1, 2022.  *Id.* at ¶ 10.  On the afternoon of Saturday, January 15, 2022, Defendant dispatched an ATM technician to service one of Plaintiff's ATMs.  *Id.* at ¶¶ 16-17; Reply at 8 n.6.  Servicing required removing four "cassettes" of cash totaling $187,340.00 from the ATM, which the technician then placed "on the pavement" until he finished servicing the ATM.  Compl. at ¶ 18.  But before the technician's work concluded, an armed man approached, held the technician at gunpoint, seized the cassettes, and absconded.  *Id.* at ¶ 19.  Police later apprehended the gunman but recovered only $50,020.00.  *Id.* at ¶ 20.

In May 2022, Plaintiff filed the instant suit seeking compensatory and punitive damages arising from alleged breach of contract, breach of the implied covenant of good faith and fair dealing, breach of warranty, negligence, and prima facie tort.  Compl. at ¶¶ 22–51.  In response, Defendant invoked this Court's removal jurisdiction on June 3, 2022, and three weeks later moved to dismiss Plaintiff's Complaint in its entirety.  ECFs 1, 10.

### B.  The Contract

The Contract addresses issues central to the Motion's resolution: availability of remedies, applicability of warranties, and caps on recovery.  First, the parties agreed to limit the types of damages the non-breaching party can recover in the "MUTUAL WAIVER OF DAMAGES" provision.  *See* Contract at § 11.[2]  The Damages Waiver provides:

NOTWITHSTANDING ANYTHING ELSE IN THIS AGREEMENT, NEITHER

---

[2] Because Plaintiff appended the Contract to its Complaint, citations to the Contract will be labeled "Contract" for the sake of clarity.

PARTY SHALL BE LIABLE FOR ANY INDIRECT, LIQUIDATED, CONSEQUENTIAL, SPECIAL OR ECONOMIC LOSS, COST LIABILITY, DAMAGE OR EXPENSES HOWSOEVER ARISING, WHETHER OR NOT FORESEEABLE AND WHETHER OR NOT DUE TO NEGLIGENCE OF EITHER PARTY IN PART OR IN WHOLE.

*Id.* at § 11.  Second, the parties enumerated specific warranties and agreed to disclaim all others, both express and implied, in the Contract's "WARRANTY" section.  *Id.* at § 8.  This Section covers Defendant's servicing, replacement parts, and equipping physical security components of the ATM.  *Id.*[3]  Beyond those specific guarantees, the parties disclaimed all other warranties, specifically promising that:

THE FOREGOING WARRANTIES ARE THE SOLE AND EXCLUSIVE WARRANTIES GIVEN BY SELLER IN CONNECTION WITH THE SERVICES PERFORMED AND PRODUCTS PROVIDED HEREUNDER, AND ARE IN LIEU OF ALL OTHER WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, WHICH ARE HEREBY DISCLAIMED AND EXCLUDED BY SELLER, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE.

*Id.*.  Third, the Contract's "LIMITATION OF LIABILITY" provision operates to cap Defendant's monetary liability at the Contract value, irrespective of whether the successful theory of liability sounded in contract or tort.  Specifically, the parties agreed that:

[T]he aggregate liability of Seller to the Customer, whether in contract, tort (including negligence), or otherwise[,] will be limited to one (1) times the contract value, provided however [that] the foregoing does not limit the liability of Seller for any injury to, or death of a person, caused by the gross negligence of the Seller.

---

[3] For services, the Contract warrants only those services provided "on a time and materials basis" and only insofar as such services are "performed in accordance with generally accepted industry standards and practices."  *Id.*  If such services fail to comply with the abovementioned standard within ninety days of servicing, Defendant promised to re-perform the noncompliant services without charge.  *Id.*  Also, the Contract disclaims all warranties for Defendant's inspection duties.  *Id.*

*Id.* at § 12.  Lastly, Defendant promised to "perform all work during normal business hours," defined as "Monday through Friday, 8:00 a.m. to 10:00 p.m."  *Id.* at § 4.

### C.  The Complaint

Plaintiff's Complaint raises claims sounding in both contract and tort.  *See* Compl. at ¶¶ 22–56 (alleging breach of contract, breach of implied covenant of good faith and fair dealing, breach of warranty, negligence, prima facie tort, and a claim for punitive damages styled as a stand-alone cause of action).

Turning first to the contract claims, Count I alleges breach of contract.  Plaintiff reasons that Defendant breached the Contract by servicing the ATM on a Saturday afternoon, outside of the Contract's "regular business hours," thereby contravening "generally accepted industry standards and practices."  *Id.* at ¶¶ 28–30.  In Count II, Plaintiff claims breach of the implied covenant of good faith and fair dealing imposed by New Mexico law because Plaintiff, "[u]pon information and belief," alleges that Defendant acted with scienter in "us[ing] the [Contract] to the detriment of [Plaintiff]" and "prevent[ing] performance" of the Contract.  *Id.* at ¶¶ 33–38.  And akin to Count I, Count III alleges breach of warranty because Defendant promised to perform its services in accordance with "generally accepted industry standards and practices," and Plaintiff insists that Defendant's technician deviated from those standards by performing the servicing on a Saturday afternoon and placing the cassettes of cash on the pavement.  *Id.* at ¶¶ 39–42.

Plaintiff pleads tort claims in Counts IV and V.  Count IV asserts that Defendant is liable for negligence because it: (1) owed a "duty of ordinary care" in performing its contractually obligated servicing, and (2) violated this alleged duty of care when, outside of normal business hours, Defendants' technician placed the cassettes on the ground.  *Id.* at ¶¶ 43–46.  In Count V,

Plaintiff contends that Defendant is liable for prima facie tort because it purposefully—and with the intent to injure Plaintiff—placed the ATM cassettes on the sidewalk.  *Id.* at ¶¶ 47–50.

For each of the first five claims, Plaintiff seeks $137,320.00 in damages, which represents the total amount of money stolen during the robbery minus the amount recovered from the robber upon his arrest.  *Id.* at ¶¶ 30, 38, 42, 46, 50.  In Count VI, Plaintiff requests a punitive damages award on top of any other damages awarded.  *Id.* at 7.

## II.   PARTIES' PRIMARY ARGUMENTS

Defendant's Motion can be reduced to four basic arguments.  First, Defendant argues that the Damages Waiver provision bars Plaintiff's claims insofar as they request "consequential" damages, which would encompass all but the punitive damages claim, because the $137,320.00 Plaintiff seeks would be consequential damages forbidden by the Contract.  Mot. at 5–7; Reply at 2–5.  Second, Defendant contends that, because the Contract's Warranties Disclaimer provision disclaims all but three enumerated warranties, none of which apply here, the Contract precludes Plaintiff's breach of warranty claim altogether.  Mot. at 7–9; Reply at 4.[4]  Third, Defendant asserts that the Complaint lacks necessary factual allegations to support the scienter requirements for Plaintiff's claims for breach-of-implied-covenant, prima facie tort, negligence, and punitive damages.  Mot. at 9–17; Reply at 6–10.  Finally, Defendant categorically contests the validity of the Complaint's tort claims because Defendant did not owe a duty to Plaintiff outside the Contract, and Plaintiff must plead independent legal duties to escape dismissal pursuant to the economic loss doctrine.  Reply at 3 n.1; *see* Mot. at 6–7, 9, 11, 16.

Plaintiff response is best understood as threefold.  First, Plaintiff urges the Court to treat its requested relief as compensatory damages, not consequential damages, because Plaintiff's

---

[4] Defendant also contends that the Warranties Disclaimer provision would preclude all relief other than specific performance re-doing the labor.

requested relief seeks to compensate for a direct and literal loss.  Resp. at 4 (citing *Compensatory Damages*, *Black's Law Dictionary* (7th ed. 1999)).   Next, Plaintiff construes the Contract's Limitation of Liability Provision, which caps liability "in contract or tort" at the contract value, as a clear authorization by the parties to raise claims sounding in tort.  *Id.* at 4–5.  Third, Plaintiff insists that its Complaint satisfies federal pleading standards or, alternatively, that discovery will shore up any pleading deficiencies.[5]

## III.  APPLICABLE LAW

### A.  Rule 12(b)(6) Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *E.g.*, *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive Rule 12(b)(6) review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  This burden of plausibility and not mere possibility demands more of pleadings in federal court than does its New Mexico state analogue.[6]

Plausibility requires not necessarily "*detailed* factual allegations," but allegations beyond "labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 545 (emphasis added) (internal citations and quotations omitted); *see also Papasan v.*

---

[5] Plaintiff spends much of the Response repeating the principal narrative from the Complaint—that Defendant's technician exposed his employer to liability by placing the cash cassettes on the ground while servicing the ATM on a weekend afternoon.  Additionally, Plaintiff's Response raises a new theory never squarely mentioned in the Complaint: that Defendant's technician possibly colluded with the armed robber.  But Plaintiff as of yet has not amended the Complaint to allege any facts supporting this mysterious theory.

[6] *See, e.g.*, *Madrid v. Vill. of Chama*, 2012-NMCA-071, ¶ 17, 283 P.3d 871, 876 (internal citations omitted) (New Mexico "require[es] only that the plaintiff allege facts sufficient to put the defendant on notice of his claims.  As a result, our appellate courts have never required trial courts to consider the merits of a plaintiff's allegations," as *Iqbal* requires of federal trial courts).

*Allain*, 478 U.S. 265, 286 (1986) (Courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").  A plausible claim for relief rests on "well-pleaded" factual allegations, which receive a presumption of truthfulness, unlike "'legal conclusions' [or] '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"  *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  These factual allegations must come from the complaint. *Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020).

Plausibility requires allegations that support a "reasonable inference that the defendant is liable for the alleged misconduct."  *Iqbal*, 556 U.S. at 663.  Facial plausibility is more than "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims," but rather, allegations that "give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims" once granted access to discovery's toolkit.  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original); *see also Iqbal*, 556 U.S. at 663 (facts "merely consistent with a defendant's liability . . . stop short of the line between possibility and plausibility" (internal quotations omitted)).

The plausibility versus possibility distinction triggers a two-step analysis.  First, a court must separate legal conclusions and perfunctory recitations of claim elements from the well-pleaded factual allegations.  Next, discarding all but the well-pleaded factual allegations, the court evaluates whether those factual allegations, if presumed true, plausibly support a plaintiff's claimed entitlement to relief or instead present merely "unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

**B. Applicable Contract Law**

Substantive New Mexico state contract law governs the Contract's construction.[7]  Where gaps in New Mexico state law exist, the Court must attempt to predict how the New Mexico Supreme Court would rule if squarely presented with the gap-filling question.  *E.g.*, *Mozeke v. Int'l Paper Co.*, 856 F.2d 722 (5th Cir. 1988).

1.   Contract Interpretation

Under New Mexico law, as with any contract, a reviewing court must give effect to the contractual parties' intent and, "when the terms of the agreement are clear and unambiguous," must divine that shared intent from "the ordinary meaning" of the contract's terms.  *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶54, 115 N.M. 690, 704.  New Mexico also follows the parol evidence rule, which provides that a court cannot consider extrinsic evidence to "contradict [or] perhaps even supplement" the terms of a contract, and such evidence may only be admitted to aid in interpreting an ambiguous contract.  *E.g.*, *Chisholm's Vill. Plaza, LLC v. Traveler's Com. Ins. Co.*, --- F. Supp. 3d ---, 2022 WL 3369202, at *21 (D.N.M. Aug. 16, 2022) (citing cases).  Whether ambiguity exists within a contract is a matter of law, but the New Mexico Supreme Court urges courts "not [to] 'create ambiguity where none exists.'"  *Id.*; 2022 WL 3369202, at *22 (quoting *United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 10).

2.   Legal Remedies

When a party breaches a contract, New Mexico contract law allows recovery of general damages, consequential damages, or punitive damages.  General damages in New Mexico must "arise naturally and necessarily as the result of [contractual] breach" and "give the plaintiff

---

[7] This case invokes the Court's diversity jurisdiction, *see* 28 U.S.C. § 1332, and the parties chose New Mexico state law to govern the Contract.  *E.g.*, *USAA Casualty Ins. Co. v. Calderon*, 818 F. App'x 828, 830 (10th Cir. 2020); *see also* Contract at § 16 ("[The Contract] shall be . . . governed by the laws of the State in which the work is to be performed including all matters of construction, validity, performance and enforcement.").

whatever value [it] would have obtained from the breached contract." *Sunnyland Farms, Inc. v. Central N.M. Elec. Co-op., Inc.*, 2013-NMSC-017, ¶ 11, 301 P.3d 387, 392.[8]  By contrast, consequential damages depend on the "benefits [the promised performance] can produce or losses that may be caused by its absence." *Id.* at ¶ 11; *see also Calderon*, 818 F. App'x at 832 (emphasis added) ("Consequential damages . . . flow *indirectly* from the wrongful act.").

Unforeseeability functions as a limit on the scope of liability for consequential damages. *See generally Hadley v. Baxendale*, 156 Eng. Rep. 145, 9 Ex. 341 (1854) (barring recovery for harm deemed objectively unforeseeable to the breaching party).  To be recoverable, the harm complained of must have been a probable, i.e., foreseeable "result of [the defendant's] breach when the contract was made," and New Mexico state law demands more foreseeability when the claim sounds in contract.  *See, e.g.*, *Sunnyland Farms, Inc.*, 2013-NMSC-017, at ¶¶ 13–17; *accord* Restatement (Second) of Contracts § 351 cmt. a–b (Am. L. Inst. 1981) ("[N]o recovery for [loss] unless . . . foreseeable by [defendant] because of special circumstances *that he had reason to know when he made the contract*" (emphasis added)).

Foreseeability notwithstanding, contractual parties may agree to categorically waive their claim to consequential damages.  *See Talley v. Sec'y Serv. Corp.*, 1983-NMSC-046, ¶ 18, 99 N.M. 702, 706 (internal quotations omitted); *e.g.*, *J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 3:18-cv-01104, 2020 WL 1855190, at *1 (D. Or. Apr. 13, 2020) (unreported) (enforcing consequential damages waiver provision under New Mexico law); *Carl Kelley Const. LLC v. Danco Techs.*, 656 F. Supp. 2d. 1323, 1344 (D.N.M. Aug. 7, 2009) (rejecting procedural

---

[8] The subcategories of general damages available to compensate an injured contractual party depend on what the party requests: the anticipated contractual profits but for breach ("expectation damages") or, if the plaintiff cannot measure lost profits with a judicially acceptable degree of certainty, a monetary award capable of returning plaintiff to the status quo ante ("reliance damages").  *Compare Expectation Damages*, *Black's Law Dictionary* (8th ed. 2004) ("Compensation awarded for the loss of what a person reasonably anticipated from a transaction that was not completed."), *with Reliance Damages*, *Black's Law Dictionary* (8th ed. 2004) ("Damages awarded for losses incurred by the plaintiff in reliance on the contract.").

unconscionability challenge to contractual warranty disclaimer under New Mexico law).[9]  Valid

waiver requires that (1) the party's right exists, (2) the party knows of the right, and (3) the party

expresses intent to relinquish the right.  *E.g.*, *Talley*, 1983-NMSC-046, ¶ 18; *see also Wheeler*

*Peak, LLC v. L.C.I.2, Inc.*, No. CIV 07-1117 JB/WDS, 2009 WL 1329115, at *8–9 (D.N.M. Apr.

13, 2009) (unreported) (New Mexico law does not impose "some heightened or different proof"

for a waiver-of-damages clause).  Like other states, New Mexico honors such waivers because:

> "New Mexico['s] . . . strong public policy of freedom to contract . . . requires enforcement of contracts unless they clearly contravene some law or rule of public morals [because] '[g]reat damage is done where businesses cannot count on certainty in their legal relationships[,] and strong reasons must support a court . . . interfer[ing] in a legal relationship voluntarily assumed by the parties."

*E.g.*, *Berlangieri v. Running Elk Corp.*, 2003-NMSC-024, ¶¶ 20–21, 134 N.M. 341, 348.

## IV.  ANALYSIS

### A.  The Complaint Falls Short of Satisfying Federal Pleading Standards

Before *Twombly*, a complaint withstood Rule 12(b)(6) review unless it "appear[ed] beyond

doubt that the plaintiff c[ould] prove no set of facts which would entitle [it] to relief."  *Conley v.*

*Gibson*, 355 U.S. 41, 45–46 (1957); *accord* Fed. R. Civ. P. 8.  The *Conley* standard embodied

principles of "notice pleading," which prioritizes giving defendants fair notice of the claims filed

against them.  But in 2007, the Supreme Court abrogated *Conley* with *Twombly* and, two years

later in *Iqbal*, confirmed that the new standard applied to all civil cases.  *Twombly*, 550 U.S. at

561–62; *Iqbal*, 556 U.S. at 684.  Now, as a result, "[n]otice pleading is dead" in the federal courts.

*See generally* A. Benjamin Spencer, *Plausibility Pleading*, 49 B.C. L. Rev. 431 (2010) (explaining

the new standard and its degree of departure from the old paradigm).

*Twombly* and *Iqbal* replaced traditional "notice pleading" with a "plausibility standard,"

---

[9] The same goes for a legal claim such as breach of warranty.

which turns on alleging "enough factual matter to suggest" the claim being made could be at least plausible. *Twombly*, 550 U.S. at 557.  Rather than provide a straightforward definition, the Court attempted to define plausible factual matter by identifying what would not suffice: "unadorned accusations," mere "labels and conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Id.* at 555, 557.  These three categories of information are not "factual matter" and therefore get erased from the calculus.  The new standard does not treat accusations as true, does not presume conclusions to be correct, and does not accept as true the elements of a cause of action when they are merely and formulaically invoked in the complaint.  Instead, a plaintiff must plead assertions of *fact*—not legal conclusions, not bald accusations—and to be sufficient, those asserted facts must construct a narrative with enough factual specificity to suggest plausibility when those facts are presumed true.

Here, all six of the Complaint's claims lack necessary factual allegations to satisfy current federal pleading standards.  Although some claims contain bona fide factual allegations that could be considered plausible per *Twombly* and *Iqbal*, no single claim contains enough factual allegations to trace a line between the claim made and the remedy requested.  Instead, all six claims rely at least to some extent on legal conclusions, unadorned accusations, or regurgitations of legal elements that *Twombly* expressly forbade.  Count I, breach of contract, is illustrative:

> 17. On 1/15/2022, [Defendant] serviced the drive[-]through ATM at the Riverside Drive Branch after normal business hours.[10]
>
> 23. Under the [Contract], [Defendant] is required to perform [its duties] during normal business hours, defined as Monday – Friday, 8 am to 10 pm.
>
> 24. Under the [Contract], [Defendant] is required to perform [its duties] in accordance with generally accepted industry standards and practices.
>
> 25. Between 7/1/2021 and 1/15/2022, [Defendant never] contacted [Plaintiff] to request that service of the ATM's [sic] . . . be performed outside of

---

[10] Paragraph 22 incorporates this allegation by reference.

normal business hours.

26. [Nor did Defendant] inform[ ] [Plaintiff] that the [bank location] was a hazardous location, [sic or needed to be made safe before the drive through [sic] ATM could be serviced.

27. The [Contract] is a binding, enforceable contract between [the parties].

28. [Defendant's technician's] actions on 1/15/2022, including without limitation his performing [contractual duties] on a Saturday after normal business hours, his removing four (4) cassettes [of cash] from the ATM and leaving them on the pavement in a parking lot in full view of the public . . . is a breach . . . under the [Contract].

29. The[se] Actions violate generally accepted industry standards and practices for the servicing of ATM's [sic].

30. [Plaintiff] has been damaged by [Defendant's] breach of the [Contract] in an amount to be determined at trial, including without limitation the loss of $137,320.00 in cash.

Compl. at 3-4.  Of the individual assertions, paragraphs 17, 23, 24, 25, and 26 arguably contain

factual allegations; paragraphs 27 and 28 are legal conclusions; paragraph 29 is a mere conclusory

statement; and paragraph 30 contains both a legal conclusion (breach) and a factual allegation

(damages).  Ignoring all but the factual allegations, as binding precedent requires, the Court is left

with only these facts: (1) the Contract obligated Defendant to service the ATM during "normal

business hours" and according to industry standards; (2) Defendant neither warned Plaintiff that it

sought to service the ATM outside normal business hours nor recommended extra security during

servicing; (3) Defendant serviced the ATM outside of what the contract defined as "normal

business hours" and left cassettes of cash on the pavement of a parking lot in full view of the

public; and (4) Plaintiff suffered a monetary loss of at least $137,320.00.  These facts—even when

presumed true—fall short of articulating a claim for breach of contract.  At most, these allegations

satisfy only three of the four elements such a claim requires: duty (paragraphs 23–24), breach

(paragraphs 17, 22), and damages (paragraph 30).  But they are silent on whether or how the

contract violations *caused* Plaintiff's damages.

As the analysis below explains, each of Plaintiff's claims either fails to meet federal pleading standards or rests upon legal impossibilities that would make any amendment futile.[11]

### B. Breach of Contract Claims

#### 1. Legal Standard

A breach-of-contract claim in New Mexico requires alleging: (1) a valid contract existed, (2) breach of that contract, (3) damages, and (4) a causal connection between the breach and damages. *See, e.g.*, *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1030 (D.N.M. June 28, 2013). New Mexico courts appear to demand a greater showing of proximate causation in the contract context (as opposed to tort law). *See, e.g.*, *Sunnyland Farms, Inc.*, 2013-NMSC-017, at ¶ 17 ("[M]ore stringent foreseeability [is] required for consequential damages in contract." (citing Restatement (Second) of Contracts § 351 cmt. a (Am. L. Inst. 1981))). When no reasonable jury could disagree, a judge may settle the inquiry as a matter of law. *Griego v. Marquez*, 1976-NMCA-022, ¶ 11, 89 N.M. 11, 13; *but see Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 35, 134 N.M. 43, 57 (confirming that, on a motion for summary judgment, "[a] court may decide questions of negligence and proximate cause, [sic] if no facts are presented that could allow a reasonable jury to find [otherwise]" (quoting *Calkins v. Cox Estates*, 1990-NMSC-044, ¶ 18 n.6, 110 N.M. 59, 66)).

#### 2. Plaintiff Pleads No Facts Plausibly Suggesting Proximate Cause

The Complaint blames Defendant for Plaintiff's monetary loss because servicing the ATM outside of "normal business hours," and placing the cassettes on the ground while doing so violated the "generally accepted industry standards and practices for the servicing of ATM's [sic]" and,

---

[11] *DeHaan v. United States*, 3 F. App'x 729, 731 (10th Cir. 2001) (unpublished) (internal citation omitted) ("[L]eave to amend need not be freely given when amendment would be futile.").

consequently, Plaintiff was "damaged *by* [*Defendant's*] *breach*." *See* Compl. ¶¶ 28–30 (emphasis added). But Count I's survival depends on whether Plaintiff can allege *facts* plausibly suggesting that the armed robbery was "foreseeable as a probable result of" placing the cassettes on the ground on a Saturday afternoon. Under current federal pleading standards, this burden demands factual allegations supporting Plaintiff's contention that the loss was foreseeable "as a probable result of a breach because it follows from the breach [either] (a) in the ordinary course of events, or (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know." Restatement (Second) of Contract § 351(2) (Am. L. Inst. 1981); *Sunnyland Farms*, 2013-NMSC-01, at ¶¶ 13–17.

But the Complaint included no facts about the "generally accepted industry standards and practices" that could support concluding that the service technician's methodology departed from what a reasonable ATM technician would do. Nor did the Complaint include facts demonstrating how the technician's chosen methodology or the time he performed the service actually *caused* the Plaintiff's damages.[12] While true that the servicing may have indirectly exposed the cassettes to theft, the Complaint contains no factual allegations plausibly supporting Plaintiff's claim that the allegedly substandard servicing foreseeably led to that loss—indeed, the simpler cause appears to be a seemingly random robbery committed by a third party. *Compare* Compl. at ¶¶ 23–30 (omitting any mention of third parties), *with id.* at ¶¶ 19–20 (acknowledging that a third party "pointed a weapon at [Defendant's technician] and took all four (4) cassettes"). And although Defendant's alleged "substandard ATM servicing on a weekend" could amount to a violation of the Contract, the Complaint nevertheless omits factual allegations supporting how that time of day and that day of the week increased the foreseeability of armed robbery at that ATM. Mot. at 15;

---

[12] At the hearing, Plaintiff's counsel conceded that, if allowed to amend, he would add factual allegations about industry standards. Tr. at 35:1–35:14.

*see* Compl. at ¶¶ 23–30; *see also* Tr. at 37:5–37:14 (Plaintiff's counsel agreeing that intuition actually supports the opposite inference).

So, although it is perhaps *possible* that Defendant could have foreseeably caused this loss, the Complaint lacks any factual allegations that, when presumed true, would "nudge[ ] [the] claim[ ] . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (internal quotations and citations omitted).  Without such allegations, Count I runs afoul of Rule 12(b)(6).  Plaintiff's failure to adequately plead causation means it "fails to state a claim upon which relief can be granted"—unless Plaintiff can amend its Complaint with facts suggesting otherwise.  Because the Court cannot presently conclude that permitting Plaintiff to amend this claim would be futile, the Court will grant Plaintiff an opportunity to amend Count I.

### C.  Implied Covenant of Good Faith and Fair Dealing

#### 1.  Legal Standard

An implied covenant exists only after drawing an "infer[ence] from the whole agreement and the conduct of the parties." *Implied Covenant*, *Black's Law Dictionary* (9th ed. 2004).  New Mexico courts disfavor reading implied covenants into commercial transactions, "especially when a written agreement between the parties is apparently complete."  *Cont'l Potash*, 1993-NMSC-039, ¶¶ 55–56.  To read an implied covenant into an agreement, New Mexico courts typically require unavoidably clear intent ascertainable on the agreement's face.  *Id.* at ¶¶ 55–56 (arising in a mining law dispute but not relying on language limiting the holding to mineral contracts).  New

Mexico Supreme Court precedent emphasizes that courts should read an implied covenant into a contract only when obviously within the parties' shared intent or to avoid frustration of purpose.[13]

One covenant implied within every New Mexico contract, unless waived, is the implied covenant of good faith and fair dealing. *See id.* at ¶ 65 ("Whether express or not, every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract."). To show a breach of this implied covenant, a plaintiff must show "bad faith or that one party wrongfully and intentionally" used the contract to the other party's detriment. *Id.* The New Mexico Supreme Court explained that this covenant imposes no affirmative duties to protect the non-breaching party; "instead, it proscribes action" that would not have occurred but for the desire to prosper at the other party's expense. *See id.* at ¶¶ 65–66.

### 2. Count II Contains No Facts Suggesting Defendant Acted with Scienter

The Complaint alleges merely that: (1) Defendant's weekend afternoon servicing and cassette placement "prevented performance of the [Contract]" and withheld its benefits from Plaintiff; (2) "[u]pon information and belief," Defendant acted "in bad faith or wrongfully and intentionally"; (3) thereby breaching the contract and (4) harming Plaintiff in an amount constituting the prohibited consequential damages analyzed above. *See* Compl. at ¶¶ 35–38.

But the Complaint withholds the facts used to reach the conclusion that Defendant acted with scienter. Instead, Plaintiff argues in its Response that discovery offers the possibility of determining that Defendant's service technician may have colluded with the man who robbed him at gunpoint. Even if the Court were to ignore the fact that this allegation lies outside the Complaint,

---

[13] The New Mexico Supreme Court approvingly noted that "when parties reduce their agreement to writing," the contract presumably embodies the entire agreement, and the court "should not read into the instrument additional provisions" unless either necessary to effectuate the parties' intent, which must appear so clearly within their contemplation that they deemed it unnecessary to express, or if necessary to effectuate the contract's "full purpose" as a whole. *Id.* (discussed in the context of mining law); *but see id.* ("It is not enough to say that an implied covenant is necessary in order to make the contract fair . . . or that [it] would operate unjustly. It must arise from the presumed intention of the parties." (quoting *Kingsley v. Western Nat. Gas Co.*, 393 S.W.2d 345, 350–51 (Tex. Civ. App. 1965))).

Plaintiff's contention implicitly concedes that it presently lacks any factual support for its suspicion of collusion, which means this claim rests only on hope, hunch, or "the mere metaphysical possibility" of proving a conspiracy. *Schneider*, 493 F.3d at 1177. Like the petitioner in *Iqbal*, alleging that former Attorney General John Ashcroft personally saw to his torture, the mere possibility that such a reality could exist does not equate to an allegation that crosses "the line between possibility and plausibility." *See Iqbal*, 556 U.S. at 678.

As currently pleaded, Count II alleges nothing more than legal conclusions and conclusory factual inferences. Such assertions are not "well-pleaded" factual allegations capable of supporting this claim. After extracting them from the calculus, the Court concludes that Count II fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). But because the Court cannot presently conclude that permitting Plaintiff to amend this claim would be futile, the Court will grant Plaintiff an opportunity to amend Count II.

### D. Breach of Warranty

#### 1. Legal Standard

The New Mexico Supreme Court defines a warranty as a contractual party's "assurance," whether express or implied, "of the existence of a fact upon which the other party may rely." *Steadman v. Turner*, 1973-NMCA-033, ¶ 15, 84 N.M. 738, 742; *see also Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, 119 N.M. 442 ("What is being promised is indemnification against loss" (internal quotations omitted)), *overruled on other grounds by Sunnyland Farms*, 2013-NMSC-017. To recover under New Mexico state law, a plaintiff must make showings virtually identical to a breach-of-contract claim: (1) the warranty's existence, (2) breach of said warranty, (3) an unbroken causal chain, and (4) damages. *E.g.*, *Anderson Living Tr.*, 952 F. Supp. 2d at 1030.

### 2. Count III Lacks Essential Factual Allegations

The Contract expressly disclaims any implied warranties and provides only three express warranties.  Contract at § 8 (warranting non-inspection services only if "on a time and materials basis" that fall below industry standard and warranting the reliability of replacement ATM parts or ATM physical security "equipment and labor").  By its language, the Contract's services warranty applies only if the service was being performed on a "time and materials basis."  *See id.* To survive Rule 12(b)(6) review, therefore, Count II would need to allege that the service in question was being performed on a "time and materials basis" and also allege how the service fell below industry standards.  Here, however, Count II fails on both grounds.  First, it does not allege that Defendant's technician performed service on the day of the robbery "on a time and materials basis," And second, Count II's assertion that the technician's service violated the industry standard suffers from the same factual deficiencies the Court identified and explained with respect to the breach-of-contract claim in Count I.  Section IV(B)(2), *supra*.  Both claims wholly lack factual allegations suggesting what ATM-servicing industry standards are, what exactly Defendant did to violate them, and how such violation caused an armed robbery.  *See* Compl. at ¶¶ 40–42.[14]

As currently pleaded, Count III fails to comply with Rule 12(b)(6).  Again, however, the Court will grant Plaintiff an opportunity to amend, as the Court cannot presently conclude that amendment would be futile.

### E. Negligence

#### 1. Legal Standard

Under New Mexico law, negligence consists of four quintessential elements: (1) an existing

---

[14] At oral argument, Plaintiff attempted to justify this omission by relying on an earlier and now obsolete view of federal pleading standards.  *See* Tr. at 40:2–40:6 (subjugating the current *Twombly/Iqbal* "plausibility" standard in favor of the now-abrogated *Conley* "notice pleading" standard).  Consistent with the view it expressed at the hearing, the Court remains persuaded that *Twombly/Iqbal* require well more than Plaintiff's Complaint provided.

duty defendant owed plaintiff, (2) breach of said duty, (3) causation, and (4) damages. *E.g.*, *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 47–48. A duty exists only when the defendant has an obligation that New Mexico law would "give recognition and effect." *Herrera*, 2003-NMSC-018, at ¶¶ 7, 9. A judge decides whether New Mexico law recognizes an alleged duty "using established legal policy" divined from statute or common law. *Id.* at ¶¶ 7, 14 (citation omitted); *see also Snelling v. Tribal Vapors*, No. Civ 19-0686-JB/GJF, 2021 WL 1227836, at *27 (D.N.M. Mar. 30, 2021).

As Defendant correctly notes, the economic loss doctrine is one such "established legal policy" that affects whether a tort duty exists between parties to a contract. Although the rule varies slightly by jurisdiction, the rule generally insulates a defendant from tort claims arising from an alleged breach of contract when the plaintiff seeks redress for a purely economic loss—as opposed to physical injury or property damage—absent an independent duty of care imposed by tort law. *Utah Intern., Inc. v. Caterpillar Tractor Co.*, 1989-NMCA-010, ¶ 17, 108 N.M. 539, 542 (adopting the economic loss doctrine in a strict products liability context); *see, e.g.*, *Adobe Masters, Inc. v. Downey*, 1994-NMSC-101, 118 N.M. 547 (applying a special relationship exception to permit recovery for "substandard services arising from a contract" because an architect neglected his special duty to reasonably apply his professional knowledge and skill); *see generally Economic-Loss Rule*, *Black's Law Dictionary* (9th ed. 2004). The legal policies enshrined by the economic loss doctrine are: (1) protecting sophisticated contractual parties' freedom "to bargain and allocate the risk" and (2) "preserv[ing] the bedrock principle that contract damages be limited to those within the contemplation and control of the parties" during the contract's formation. *In re Consol. Vista Hills Retaining Wall Litig.*, 1995-NMSC-020, ¶ 28, 199 N.M. 542, 550 (internal quotations omitted).

The New Mexico Supreme Court first adopted this rule because, without it, contractual parties could "use tort law to alter or avoid the bargain struck in the[ir] contract" which would "allow[ ] contract law [to] be subsumed by strict liability and negligence." *Caterpillar Tractor*, 1989-NMCA at ¶ 17. Indeed, myriad New Mexico higher court opinions broadly emphasize the importance of holding contractual parties to their promises using rationales not unique to goods contracts. *See, e.g.*, *Running Elk Corp.*, 2003-NMSC-024, ¶¶ 20–21.[15]

### 2.   Defendant Had No Independent Legal Duty Apart from the Contract

In Count IV, the Complaint pleads that Defendant owed Plaintiff a common law "duty of ordinary care" in the course of performing its contractual obligation to "service[e] the drive through ATM." Compl. at ¶ 45. Yet neither the Complaint nor the Response cites any authority for the proposition that ATM servicers owe a common law duty of ordinary care to commercial banks. *Compare* Compl. at ¶ 44 (asserting the conclusion without citation to authority), *and* Resp. at 11 (citing *Chavez v. Desert Eagle Distrib. Co. of N.M.*, 2007-NMCA-018, ¶¶ 15–17, 151 P.3d 77, 83–85) (arguing that policy and foreseeability justify imposing a tort duty on Defendant), *with Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 2014-NMSC-014, 326 P.3d 465) (abandoning the foreseeability prong in negligence-duty analysis), *and Vista Hills*, 1995-NMSC-020, ¶ 28 ("As a matter of policy, the parties should not be allowed to use tort law to alter or avoid the bargain [they] struck . . . . The law of contract provides an adequate remedy.").

---

[15] New Mexico appellate courts still await an appropriate opportunity to extend the doctrine to service contracts as no case has squarely presented that issue. *See NM-Emerald, LLC v. Interstate Dev.*, LLC, 2021-NMCA-020, ¶¶ 9–10, 12, 488 P.3d 707, 711 (internal citation omitted) (forgoing analysis of the economic loss rule's applicability to service contracts only because "the parties . . . neither acknowledged nor briefed the matter as an issue of first impression in New Mexico" and "to rule on [extending the economic loss doctrine] would thus require . . . 'a strain on judicial resources and a substantial risk of error.'"). Nonetheless, this Court endorses the view that the state appellate courts likely would extend the doctrine to cases like the instant one. *See Farmers All. Mut. Ins. Co. v. Naylor*, 452 F. Supp. 2d 1167, 1174 (D.N.M. Sept. 20, 2006) (citing New Mexico Supreme Court precedent emphasizing "commitment to the distinction between tort and contract law" in predicting that the economic loss doctrine would likely extend to service contracts).

Nor does the Complaint plead the "special relationship exception," Resp. at 11, with sufficient factual specificity.  Supposing for the sake of argument that ATM technicians' industry standards exist as a freestanding legal duty, the contours of this alleged duty remain a mystery because the Complaint lacks factual allegations defining the duty's scope.  Nor does the Complaint offer facts supporting Plaintiff's claims that the timing of servicing deviated from "generally accepted industry standards and practices for the servicing of ATMs" or why that timing heightened the risk of armed robbery.  *See* Compl. at ¶¶ 28–29.  Absent some independent legal duty, the economic loss doctrine forecloses Plaintiff's negligence claim as a matter of law.

Apart from the Contract, Defendant owed Plaintiff no legal duty.  *See* Tr. at 52:2–52:4 (Plaintiff's concession that, but for the Contract, the parties would have no relationship).  Nor can Plaintiff circumvent the Contract's bilateral and agreed-upon allocation of risk through implausible interpretations of the Contract.[16]  Thus, because amendment would be futile, the Court dismisses Count IV with prejudice.

### F.  Prima Facie Tort

#### 1.  Legal Standard

A cognizable prima facie tort claim under New Mexico law requires four allegations: (1) an intentional and lawful act, (2) intent to injure, (3) injury because of the intentional act, and (4) no relevant justification for the act.  *Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 37, 109 N.M. 386, 394; *Lexington Ins. Co. v. Rummel*, 1997-NMSC-043, ¶ 11, 123 N.M. 774, 777.  The court must

---

[16] Plaintiff insists that the parties expressly preserved tort claims based on its reading of the Contract's Limitation of Liability provision.  Resp. at 4–5 (internal citations and quotations omitted); *accord* Contract at § 12.  But that provision says nothing about Plaintiff's *ability* to bring a tort action; rather, it merely caps the amount of recoverable damages arising from any judgment whether sounding in contract or in tort.  Simply put, if Plaintiff somehow managed to secure a judgment against Defendant, this provision would limit Plaintiff's recoverable damages to no more than the value of the contract: $152,716.52—nothing more, nothing less.  Paragraphs 11 and 12 of the Contract coexist harmoniously, with neither restricting nor impacting the scope or meaning of the other.

"balanc[e] the intent to injure the defendant against both the justification for the injurious act and the severity of the injury." *Kitchell v. Pub. Serv. Co. of N.M.*, 1998-NMSC-051, ¶ 15, 126 N.M. 525, 529.

However, when "there is no evidence of an intent to injure, there is no need to proceed with the balancing test." *Id.* (internal quotations omitted). Evidence of intent to injure must be "of an 'actual intention' to injure, not merely an intent to do the act" which later resulted in the alleged injury. *Id.* at ¶ 16 (internal quotations omitted). Even supposing the defendant intended to perform the wrongful act, a plaintiff must show that defendant knew its act was wrong. *See id.* at ¶ 17 (observing that the New Mexico Supreme Court's prima facie tort jurisprudence uses the terms "malice" and "intent to injure" interchangeably).

### 2. Plaintiff Failed to Adequately Allege Defendant's Scienter

A prima facie tort claim requires plausibly pleading scienter—an intent to injure. *E.g.*, *Kitchell v. Pub. Serv. Co. of N.M.*, 1998-NMSC-051, ¶ 15, 126 N.M. 525, 529. Plaintiff attempts to satisfy this requirement, however, merely by pleading conclusory, bare-bones allegations qualified with heavy reliance on its "information and belief." Compl. at ¶ 49. As the Court has made clear, such conclusory allegations enjoy no presumption of truth. Nor does the preamble "upon information and belief" cure the problem. Because Plaintiff has failed to adequately plead facts plausibly suggesting Defendant's scienter, its prima facie tort claim will be dismissed with leave to amend.

### G. Punitive Remedies

### 1. Legal Standard

New Mexico law permits punitive damages awards in both contract and tort claims provided that the injured party shows a defendant's conduct was "willful, wanton, malicious,

reckless, oppressive, grossly negligent, or fraudulent and in bad faith," or accompanied by some other aggravating circumstances. *Ruiz v. S. Pac. Transp. Co.*, 1981-NMCA-094, ¶ 28, 97 N.M. 194, 201. Recovering punitive damages requires proving defendant's scienter by a preponderance of the evidence. *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1238 (D.N.M. Mar. 29, 2019), *aff'd*, 2021 WL 4979300 (10th Cir. Oct 27, 2021) (unreported). Additional factors for consideration include "the enormity and nature of the wrong[ ] and any aggravating circumstances." *Id.* A punitive damages claim does not stand alone but instead relies on a recognized cause of action. *See, e.g.*, *Anderson Living Tr. v. Energen Res. Corp.*, No. 13-CV-00909, 2014 WL 11515640, at *13 (D.N.M. Nov. 25, 2014) (unreported).

Punitive damages awards require an extraordinarily inculpatory mental state because, unlike compensatory or consequential damages, punitive damages seek "to punish the defendant, not to compensate for [Plaintiff's] loss." *Ruiz*, 1981-NMCA-094, ¶ 28; *see also Nowell*, 372 F. Supp. at 1258 ("Punitive damages serve two important policy objectives . . . to punish reprehensible conduct and to deter similar conduct in the future.").

### 2. Count VI Is Silent on Defendant's Alleged Reprehensible Conduct

Count VI alleges only that Defendant's servicing on a Saturday afternoon and placing the cassettes on the ground was, "[u]pon information and belief, . . . intentional, malicious, willful, and made with conscious, deliberate, and/or reckless disregard of [Plaintiff's] rights." Compl. at ¶ 53. Beyond that, the Complaint provides that "[u]pon information and belief," Defendant's technician "knew of the potential harm to [Plaintiff], but nonetheless failed to exercise care to avoid the harm." *Id.* at ¶ 54.

In this regard, the Complaint appears to be all "belief" and no "information." The Complaint contains no proper factual allegation making it plausible that Defendant acted with any

mental state that could trigger the award of punitive damages.   Instead, the Complaint offers nothing more than a quintessentially conclusory allegation.   *Compare* Compl. at ¶¶ 51–54 (concluding that Defendant acted with scienter without providing underlying facts supporting the conclusion), *with Conclusory*, *Black's Law Dictionary* (9th ed. 2004) ("Expressing a factual inference without stating the underlying facts on which the inference is based.").   The Complaint alleges no facts plausibly suggesting that Defendant's technician possessed malign intent, the willful desire to harm Plaintiff, or an intentional disregard for the risk of armed robbery while servicing the ATM.   Bereft of any factual allegations, Count VI cannot withstand Rule 12(b)(6) review simply by invoking "a legal conclusion couched as a factual allegation."   *Allain*, 478 U.S. at 286; *Alpenglow Botanicals*, 894 F.3d at 1195.

As currently pleaded, Rule 12(b)(6) requires the dismissal of Count VI.   Yet again, however, the Court cannot conclude that permitting Plaintiff to amend this claim would be futile, particularly in light of the ongoing FBI investigation.   The Court therefore grants Plaintiff an opportunity to amend its Complaint to include *factual* allegations that make it *plausible* that Defendant acted with any of the requisite mental states that would support an award of punitive damages.

## V.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Count IV of the Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Counts I, II, III, V, and VI of the Complaint are

**DISMISSED WITHOUT PREJUDICE**.[17]

**IT IS FINALLY ORDERED** that Plaintiff—if it chooses to do so—may address the

deficiencies identified in this Order by filing an Amended Complaint **no later than December 15,**

**2022**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*

---

[17] The outcome of the instant Motion permits the Court to leave for another day whether Plaintiff's requested relief constitutes "general" or "consequential" damages and whether that conclusion can be decided on Rule 12(b)(6) review or only under Rule 56.